897 F.2d 529
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John T. DEATON, Plaintiff-Appellant,
v.
Louis D. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-5698.
 United States Court of Appeals, Sixth Circuit.
 March 9, 1990.
 
 Before KEITH and KRUPANSKY, Circuit Judges, and ANNA DIGGS TAYLOR, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff John T. Deaton ("Deaton") appeals from the district court's order granting summary judgment in favor of the Secretary. For the reasons set forth below, we AFFIRM.
 
 I.
 
 2
 On February 9, 1987, Deaton filed an application for benefits, pursuant to 42 U.S.C. Secs. 416(i), 423 of the Social Security Act ("the Act"), alleging disability commencing on December 15, 1984, due to a broken bone in his neck pinching a nerve. The application was denied initially by the Social Security Administration ("the Administration") on March 25, 1987, and upon reconsideration, on April 15, 1987.
 
 
 3
 A hearing was held before an administrative law judge ("ALJ") on December 16, 1987. On March 8, 1988, the ALJ denied Deaton's application for disability benefits. The decision was affirmed by the Appeals Council on June 14, 1988, and became the Secretary's final decision.
 
 
 4
 Deaton then filed suit in the United States District Court for the Eastern District of Kentucky seeking judicial review of the Secretary's decision pursuant to 42 U.S.C. Secs. 405(g) and 1383(c)(3). By consent of the parties, a United States Magistrate assumed jurisdiction of the case. On March 29, 1989, the Magistrate recommended that the Secretary's decision be affirmed. By order dated May 1, 1989, Chief Judge Eugene E. Siler, Jr. adopted the Magistrate's Report and Recommendation and affirmed the Secretary's decision.
 
 II.
 
 5
 Deaton was born on December 20, 1946. His past work entailed general cleanup around a coal mine and general labor (i.e. sowing seeds, cutting grass, taking up hay). In 1981, Deaton claims he injured his neck and back when he fell off a water truck at a coal mine. From April 15, 1985 through July 12, 1985, Deaton was treated at the Veterans Administration Medical Center in Lexington, Kentucky for upper back pains and headaches. Deaton claimed that he had the problem for three years and was being treated by a chiropractor without any relief.[1] A physical examination revealed mild atrophy of the left upper arm muscles and x-rays from the cervical spine were abnormal. He was diagnosed as having an old compression fracture of the C4-C5 vertebral bodies with nerve root pain.
 
 
 6
 On March 10, 1987, at the Administration's request, Dr. Charles Rutledge examined Deaton, and diagnosed his condition as stemming from the 1981 injury. X-rays of the cervical vertebrae were negative for fractures or dislocations and the disc spaces were within their normal limits. On December 8, 1987, Deaton's chiropractor, Dr. F.J. Torok, reported that he had been treating Deaton since January 1983 and had conducted x-rays of Deaton's cervical and dorsal spine which revealed subluxations[2] of the 7th cervical vertebra and the first and second dorsal vertebrea. This caused pressure on nerves that exited from Deaton's spine and into his shoulders and arms. Dr. Torok indicated that Deaton received 31 chiropractic adjustments during 1983, 18 adjustments in 1984, and three during 1984 and 1985. Dr. Torok claimed that Deaton would receive temporary relief from his adjustments; but after a few days, the pain would return because of a slipped disc between the first and second dorsal vertebrae. Dr. Torok concluded that due to his condition, Deaton was limited in doing any manual labor.
 
 
 7
 In October 1987, due to his complaints of pain, Deaton was evaluated at the Veterans Administration Medical Center, in Johnson City, Tennessee. On December 14, 1987, the Veteran's Administration determined Deaton had 30% non-service connected disability due to residuals from a compression fracture of C4-C5. Decision in the case of John T. Deaton (Mar. 8, 1988) (hereinafter ALJ Decision) at 4.
 
 
 8
 From evaluating the evidence of record, the ALJ determined that Deaton has severe residuals of a compression fracture of the C4-C5 vertebral bodies and spondylolisthesis[3] of L5 to S1 of no functional significance. Deaton has the strength and ability to use his upper extremities for lifting. The cervical spine x-rays revealed that the height of the vertebrae, disc spaces and prevertebral soft tissue spaces were normal. The numbness in his left hand--the non-dominant hand--did not impede its use. Therefore, the ALJ concluded that the functional limitations related to Deaton's impairments would not cause disability within the meaning of the Act.
 
 III.
 
 9
 Our review of the Secretary's decision is limited to determining whether there is substantial evidence in the record to support the findings. McCormick v. Secretary of Health & Human Services, 861 F.2d 998, 1001 (6th Cir.1988); 42 U.S.C. Sec. 405(g). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). In determining this question, we review the evidence in the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). An administrative decision is not subject to reversal simply because substantial evidence would have supported an opposite conclusion. Willbanks v. Secretary of Health & Human Services, 847 F.2d 301, 303 (6th Cir.1988) quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986). It is the Secretary's function and not the courts to weigh the evidence and to resolve material conflicts in the record. Ragan v. Flinch, 435 F.2d 239 (6th Cir.1970) cert. denied 402 U.S. 986 (1971).
 
 
 10
 The Act provides disability benefits only to those individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. Sec. 423(d)(1)(A). If, under the federal regulations, the claimant has a medical condition which meets or exceeds the Secretary's listings of impairments, then the claimant can be found disabled on the medical evidence alone. If, however, the claimant has a severe, but unlisted impairment, then the Secretary must determine whether the claimant can pursue his former occupation. Claimants who can perform past relevant work are not entitled to disability benefits. If the claimant cannot perform his past relevant work, then the Secretary must consider "the claimant's residual functional capacity, that is, the level of work the claimant is able to perform (sedentary, light or medium) and the claimant's vocational factors--age, education and prior work experience." Kirk, 667 F.2d at 528; see 20 C.F.R. Sec. 404.1520.
 
 
 11
 Under the regulations, medium work activities include lifting no more than fifty pounds at a time, with frequent lifting or carrying of objects weighing up to twenty-five pounds. If the claimant can do medium work, it is assumed that he can also perform sedentary and light work. 20 C.F.R. Sec. 416.967(c). To determine the residual functional capacity of a claimant, the ALJ is authorized to conduct hearings and to examine witnesses. See 20 C.F.R. Secs. 404.1682-1683. It is the ALJ's responsibility to assess and determine the residual functional capacity of a claimant. 20 C.F.R. Sec. 416.946.
 
 
 12
 After considering the medical evidence of record, the testimony of vocational experts, and Deaton's age, education and work experience, the ALJ determined that Deaton retained the maximum residual functional capacity for a full range of medium work. See ALJ Decision at 6. Moreover, substantial medical evidence supports the ALJ's finding of a residual functional capacity for medium work. ALJ Decision at 4-5. Dr. Rutledge had clinical and laboratory findings that were similar to those of the treating physicians at the Veteran Administration Medical Center. Dr. Rutledge placed no physical limitations on Deaton.
 
 
 13
 Deaton had no significant physical limitations. He had significant grip strength in both hands which indicated his ability to use his upper extremities for lifting. There was no significant weight change or muscle atrophy, he failed to keep follow-up evaluations, he failed to take the prescribed pain medication, and he lives alone and tends to his own personal needs. The ALJ's decision that Deaton is not entitled to disability benefits is supported by substantial evidence; it is well-reasoned, resolves conflicts in the evidence, and assess the credibility of the testimony.
 
 IV.
 
 14
 Deaton raises three main arguments on appeal: first, that the case should be remanded because the ALJ failed to develop the record fully; second, that the ALJ failed to give extra weight to Dr. Torok's opinion; and third that the ALJ erred by failing to order consultative medical examinations. We find each argument unpersuasive.
 
 
 15
 First, Deaton contends that the case should be remanded because the ALJ did not develop the record fully as he failed to properly address Deaton's persistent complaints of pain. We find that the ALJ properly rejected Deaton's allegations of disabling pains as the physical examinations, x-rays, and clinical signs failed to confirm that a disabling level of pain could reasonably be expected from his old injury.[4] See Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986) (a claimant's subjective complaints of pain are to be evaluated under a two-pronged standard: first, is there objective medical evidence of an underlying impairment, and second, if there is, does the objective medical evidence confirm the severity of the alleged pain arising from the impairment, or is the impairment so severe that it can reasonably be expected to give rise to the alleged pain). Moreover, there was no objective medical evidence in the record to confirm the severity of the alleged pain arising from the impairment. Although the ALJ acknowledged that the evidence was consistent with some pain, he explained why the evidence did not support the level of pain Deaton alleged. Therefore, we find the ALJ applied the proper legal standard and correctly addressed Deaton's complaints of pain.
 
 
 16
 Next, Deaton maintains that the ALJ should have given extra weight to Dr. Torok's opinion that he suffered from a slipped disc. An ALJ is not bound to accept evidence of a chiropractor without weighing and comparing it with other medical evidence of record. Bradford v. Secretary of Health & Human Services, 803 F.2d 871, 873 (6th Cir.1986). Here, the ALJ weighed Dr. Torok's statement that Deaton has a slipped disc and compared it with the findings of the treating physicians at the Veterans Administration hospitals and with Dr. Rutledge's findings. He found that the physical examinations, clinical findings and x-ray findings of the treating and examining physicians were more persuasive than Dr. Torok's opinions. See ALJ Decision at 5. Therefore, there is substantial medical evidence to support the ALJ's discounting of Dr. Torok's opinion, consistent with the requirement that such an opinion be weighed and compared with other medical evidence of record.
 
 
 17
 Finally, Deaton argues that the ALJ erred by not ordering consultative medical examinations, including myelograms and CAT scans, to eliminate the possibility of a herniated disc. The burden of providing a complete record rests with the claimant. Landsaw v. Health & Human Services, 803 F.2d 211, 214 (6th Cir.1986); 20 C.F.R. Secs. 416.912, 416.913(d). The regulations "do not require an administrative law judge to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Id. at 214; see 20 C.F.R. Sec. 416.917(a).
 
 
 18
 In his decision, the ALJ noted that he left the record open for two months to provide Deaton with the opportunity to submit additional evidence. See ALJ Decision at 6. No treating physician recommended a CAT scan or myelogram, and the ALJ does not have the authority to order a claimant to submit to such invasive studies. The reports from the treating physicians at the Veterans Administration hospitals as well as Dr. Rutledge's report provided sufficient evidence for the ALJ to make a determination regarding Deaton's residual functional capacity. Given the substantial evidence supporting the ALJ's decision, we find Deaton's arguments meritless.
 
 
 19
 For the foregoing reasons, we AFFIRM the order of the district court.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Deaton did not seek any medical treatment for his injury until two years after the accident
 
 
 [2]
 Subluxations are incomplete dislocations in which the normal relationship between the vertebrae is disturbed but articular surfaces are partially in contact
 
 
 [3]
 The forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum
 
 
 [4]
 The ALJ noted:
 The evidence is consistent with the existence pain, [sic] but not to a disabling degree. For years after his injury, Deaton sought no medical treatment. After his evaluation at a Veterans Administration Medical Center in 1985, he was offered Motrin which he reported was of no benefit. He was prescribed a TNS unit and was advised to return for a follow-up evaluation but he failed to keep the appointment.
 ALJ Decision at 5.